**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**KENNETH MURRY**                                                                 **PLAINTIFF**
*ADC #172099*

**v.**                                    **No: 4:24-cv-00816-DPM-PSH**

**SAVANNA HENDERSON,** *et al.*                                          **DEFENDANTS**

## PROPOSED FINDINGS AND RECOMMENDATION

## INSTRUCTIONS

The following Recommendation has been sent to United States District Judge

D.P. Marshall Jr. You may file written objections to all or part of this Recommendation.

If you do so, those objections must: (1) specifically explain the factual and/or legal basis

for your objection, and (2) be received by the Clerk of this Court within fourteen (14)

days of this Recommendation. By not objecting, you may waive the right to appeal

questions of fact.

## DISPOSITION

### I.  Introduction

Plaintiff Kenneth Murry filed a *pro se* complaint pursuant to 42 U.S.C. § 1983

on September 24, 2024, while incarcerated in the Arkansas Division of Corrections

(ADC) (Doc. No. 2).  Murry sues Turn Key Health Clinics, LLC Nurses Savanna

Henderson, Leanne Dixon, and Leon Fields (the "Turn Key Defendants") and Faulkner

County Detention Center Lieutenant Robert Doyal and Sergeant Hunter Wade (the "County Defendants") in both their official and individual capacities. Doc. No. 2 at 1-2. He alleges that the defendants were deliberately indifferent to his serious medical needs while he was incarcerated as a pre-trial detainee at the Faulkner County Detention Center. *Id.* at 4-7.

Before the Court is a motion for summary judgment, brief-in-support, and statement of undisputed facts filed by the County Defendants (Doc. Nos. 63-65) and a motion for summary judgment, brief-in-support, and statement of undisputed facts filed by the Turn Key Defendants (Doc. Nos. 66-68). Murry filed a response, brief-in-support, and statement of undisputed facts with respect to each motion (Doc. Nos. 71-73, 75-77). The Turn Key Defendants filed a reply (Doc. No. 74) and a sur-reply (Doc. No. 80),[1] and Murry responded (Doc. Nos. 82-83). The defendants' statements of facts, and the other pleadings and exhibits in the record, establish that the material facts are not in dispute, and they are entitled to judgment as a matter of law.

## II.  Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and

---

[1] As noted in the Turn Key Defendants' sur-reply (Doc. No. 80), Murry made allegations regarding sexual harassment in his responsive pleadings which were not made in his complaint. Murry later moved to add additional evidence regarding these allegations (Doc. No. 84). On motion by the Turn Key Defendants (Doc. No. 89), the Court excluded any evidence relating to these unrelated allegations. *See* Doc. Nos. 91. *See also* Doc. No. 90 (County Defendants' Response).

that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will

not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

In *Reed v. City of St. Charles, Mo.*, 561 F.3d 788 (8th Cir. 2009), the Eighth Circuit Court of Appeals discussed the requirement that facts be viewed in the light most favorable to the nonmoving party when considering a motion for summary judgment. The Court stated, "[i]f 'opposing parties tell two different stories,' the court must review the record, determine which facts are material and genuinely disputed, and then view those facts in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them." *Id.* at 790 (*quoting Scott v. Harris*, 550 U.S. 372, 380 (2007)).

### III.  Facts[2]

Plaintiff Kenneth Murry was booked into the Faulkner County Detention Center (the "Facility") on January 16, 2023, and released to the Arkansas Division of Corrections on June 25, 2024. Doc. No. 68-2 at 1.

#### *November 30, 2023 Altercation and Subsequent Medical Treatment for Jaw/Dental Pain*

On November 30, 2023, Murry fought with other inmates (the "November 30 altercation"). Doc. No. 68-7 (video footage); Doc. No. 63-1 at 53 (Nursing Progress

---

[2] These facts were taken from the statements of fact and evidence provided by the parties. Opinions, legal conclusions, and immaterial facts are omitted. Disputed facts are noted. All quotations are transcribed verbatim without any corrections for misspellings or mistakes.

Note 11/30/2023).  After the altercation, he was brought to medical and evaluated by Defendant Savannah Henderson, a licensed practical nurse.[3]  *Id*.  Henderson's assessment documented that Murry's vital signs were "all wnl [within normal limits]." Doc. No. 63-1 at 53.   Henderson also documented that Murry was "talking normally, no slurred speech noted. Gait normal, PERRLA [pupils equal, round, reactive to light and accommodation]." *Id.* She noted: "Detainee's nose was bleeding.  Large hematoma on right side of face.  Swollen and bruised at this time." *Id*.  Henderson noted that she "contacted provider regarding plan of care" and received orders from non-party provider Anthony Carter, APRN, for "STAT x-rays of right side of face." *Id.;* Doc. No. 63-1 at 52 (Phone Orders 11/30/2023). APRN Carter also ordered Tylenol and Ibuprofen for pain. *Id.*  Murry disputes he received pain medication, and asserts he was not given an ice-pack either.  Doc. No. 71 at 2; Doc. No. 75 at 3.

On December 1, 2023, Murry underwent x-ray imaging of the facial bones (three views) at Express Mobile Diagnostic Services pursuant to APRN Carter's November 30, 2023, orders.  Doc. No. 63-1 at 120 (x-ray report).[4]  The x-ray findings documented: "There is no evidence of displaced fracture or dislocation. The orbits appear intact. The

---

[3] The video submitted shows Murry being escorted to the nurses' station.  Doc. No. 68-7.  Murry points out that it does not show him receiving treatment there or being taken to an isolation cell afterwards.  Doc. No. 75 at 3.

[4] Murry complains that the Turn Key Defendants did not submit CT scan images or the actual x-ray images.  Doc. No. 72 at 1.  There is no indication he received a CT scan after the November 30, 2023 incident.  Additionally, as the defendants point out, an x-ray report with a radiologist's conclusions is sufficient evidence of the radiologist's findings.

visualized portions of the paranasal sinuses are grossly clear." *Id*. The radiologist's impression stated: "Negative facial bones study." *Id*. The x-ray was signed by Dr. Crysela Smith, an American Board-Certified Radiologist of FLEX Teleradiology Services. *Id.*

On December 6, 2023, Defendant Leanne Dixon, a licensed practical nurse, assessed Murry in response to complaints of dental pain. Doc. No. 63-1 at 50-51 (Nursing Protocol Dental/Toothache Pain 12/6/2023). During this assessment, Murry reported pain of 7/10 associated with tooth 19 and jaw pain. *Id*. Murry reported to Dixon that he "was in an altercation last week and was punched multiple times in the face." *Id.* Dixon's December 6, 2023 assessment revealed no pus surrounding the affected tooth and vital signs within normal limits. *Id*. Dixon documented that Murry was in no distress during the December 6, 2023, assessment. *Id*. Dixon ordered Ibuprofen, Acetaminophen, and saltwater rinse to treat Murry's dental complaint. *Id.* She also noted that Murry wanted to be seen by a dentist. *Id.*

On December 20, 2023, Murry submitted a medical request, stating: "im trying to get my tooth looked at again for my third visit so i can go to the free world dentist., i have already seen ms. leanne twice this woulddbee my third tomorrow." Doc. No. 68-2 at 11. On December 20, 2023, Turn Key personnel responded: "Mr. Murry, Scheduled for sick call." *Id.* On December 21, 2023, Dixon assessed Murry for continued dental and jaw pain. Doc. No. 63-1 at 48-49 (Nursing Protocol Dental/Toothache Pain

12/21/2023).    Dixon documented no signs of infection and administered pain

medications.  *Id.*

> On January 4, 2024, Murry submitted a medical request, stating:
>
> my jaw is fractured and or dislocated.. i did not recieve any medical
> attetion on the day it happened.. i recieved a ex-ray on december 2nd or
> 3rd maybe even thhe 4th.. i was denied a free world hospital visit, now i a
> being told myy jaw is not fractured this is malpractice on the jail nurse
> savanna henderson and leanne. i cannot chew properly and my jaw is still
> swollen, i will be telling judge to get it on record what is going on at this
> facility, i need a free world doctor

Doc. No. 68-2 at 12.  Turn Key staff responded, "Mr. Murry, This is being passed along

to jail administration and the RN supervisor."  *Id.*

Murry submitted three grievances concerning medical treatment for his jaw

during the first week of January.[5]  On January 4, 2024, Murry grieved, "my jaw is

fractured and yall are refusing to let me get medical attention. I am getting this on record

for when I tell somebody above the jail."  Doc. No. 63-4 at 30.  Wade responded, "You

were given medical attention." *Id.* On January 5, 2024, Murry submitted a grievance

complaining that he went three days before seeing a nurse, and stating that he should

have been sent to a free world hospital, that his jaw is still dislocated and fractured, and

that his teeth were loose.  Doc. No. 63-4 at 31.  Defendant Sergeant Wade Hunter

responded, "This is incorrect you were taken right after the fight."  *Id.*  On January 6,

---

[5] Murry maintains he also submitted a paper grievance regarding his injured jaw
while in isolation immediately after the November 30 altercation, which was not
submitted with the defendants' motions for summary judgment or provided in discovery.
Doc. No. 76 at 5.

2024, Murry grieved, "I was taken just to take a picture. then was told i will not be given any treatment. no ice pack etc. i could barely walk."  Doc. No. 63-4 at 31.  Wade responded, "Yes our APRN looked at you a determined that you did not need to be sent out."  *Id.*

On January 26, 2024, Murry requested to visit a dentist, stating that he could not chew food properly, and was informed that he was on the dental waiting list. Doc. No. 63-2 at 24.  Murry filed another medical request on February 24, 2024, stating that he did not want to be seen by a male provider for an unrelated muscle complaint,[6] and added:

> I was also trying to see what was going on with the dental waiting list?  I was supposed to go to the dentist last month, i put in a sick call in around December 5th-8th, 2023. I was supposed to be on Januarys waiting list but I don't know what happened. My gums have been inflamed and I have 3 teeth that are not loose but seem to be protruding through the gum line. It makes it very difficult to chew and i cannot close my mouth.

*Id.* at 33.  He was informed that he was still on the dental waiting list.  *Id.*

On April 23, 2024, Murry was evaluated by non-party nurse Thomas McFarlan for his complaints of dental pain affecting tooth 22.  Doc. No. 63-1 at 26-27 (Nursing Protocol Dental/Toothache Pain 4/23/2024). McFarlan observed clinical signs of infection, including swelling and purulent drainage (pus) in the affected area. These findings were consistent with an active dental infection requiring medical intervention.

---

[6] Murry submitted a number of medical requests unrelated to his jaw and dental complaints.  *See* Doc. No. 63-2 at 24-41.  He has clarified that his request to see a female provider was in connection to an unrelated muscle complaint.  *See* Doc. No. 76 at 11-12.

*Id.* APRN Carter prescribed antibiotics for the infection.  Doc. No. 63-1 at 21 (Phone Orders).

### *June 6, 2024 Altercation and Subsequent Medical Treatment*

On June 6, 2024, Murry was involved in another inmate-on-inmate assault at the Facility.  Doc. No. 68-4 (June 7, 2024 Jail Incident Report).  Dixon assessed Murry after the altercation for his complaints of a laceration and jaw pain.  Doc. No. 63-1 at 10-11 (Nursing Protocol Open Area of the Skin 6/6/2024).  Murry reported pain of 8/10 and that his jaw "feels broken."  *Id.*  His vital signs were P 140/88, Pulse 96, Respirations 20, Temperature 98.9°F, SpO2 99%, and he had a one-inch laceration with blood drainage. *Id.*  Dixon contacted APRN Carter for further orders.  *Id.*  APRN Carter initially ordered an x-ray of Murry's jaw, but then he cancelled that order and directed that Murry be sent to the emergency room "due to extreme swelling."  Doc. No. 63-1 at 9 & 12 (Phone Orders 6/6/2024).

Murry was transported to the University of Arkansas for Medical Sciences ("UAMS") Emergency Department on June 6, 2024.  Doc. No. 63-3 at 28-54 (UAMS Emergency Department Records). Murry underwent a comprehensive diagnostic evaluation, including CT imaging of the maxillofacial region.  *Id.*  He was diagnosed with abrasion of his left cornea and bilateral closed fractures of his mandible.  *Id.* at 47. He was given pain medications and referred to ENT (Ear, Nose, and Throat) and Ophthalmology for follow-up.  *Id.* at 46-47.

After Murry's return to the Facility from UAMS, Defendant Leon Fields, RN, documented a prescription order for Naproxen 500 mg received from APRN Carter on June 7, 2024.  Doc. No. 63-1 at 7 (Phone Orders).  He also entered an order for a liquid diet for Murry the same day.  *Id.* at 8 (Medical Diet Order).  *See also* Doc. No. 63-5 at 10-14 (Declaration of Leon Fields, RN).

On June 9, 2024, Murry filed a grievance alleging that Fields threatened him while he received treatment on June 6, 2024.  Doc. No. 63-4 at 45.  Murry stated,

> . . . i was receiving medical treatment when nurse leon fields became hostile and told me he would "snatch me off" the nurse table and harm me physically.  it can all be seen on camera. I will have to defend myself if constant threats and harassment by officers keeps occurring.  . . .

*Id.*  Defendant Lieutenant Robert Doyal responded that he would review the matter.  *Id.* Murry claims there is unproduced video of this incident.  Doc. No. 73 at 6.

UAMS ENT providers Dr. Dang-Khoa Nguyen and Dr. Jennings Boyette evaluated Murry on June 11, 2024.  Doc. No. 63-3 at 20-27 (Office Visit in Ear, Nose and Throat (ENT) Clinic Records).  Dr. Nguyen described Murry's history as follows:

> Kenneth Darnell Murry is a 26 y.o. male seen in clinic today for mandibular fractures. Patient is a current inmate. He does not remember how he got his injury.  The patient was evaluated in the ED on 6/6/24 and had CT imaging which revealed a right parasymphyseal and left angle of the mandible fracture. The patient reports continued pain and has only been able to eat broth and apple sauce.  The patient states that he cannot close his jaw completely.  Reports that he had an old left jaw fracture approximately 1 year ago that caused malalignment and did not ever heal properly.

*Id.* at 20.  Based on his review of the CT imaging, Dr. Nguyen found:

- Acute right parasympyseal and left angle of the mandible fractures, the latter of which may require dental extraction
- Chronic left paraysympyseal fracture causing malalignment.

*Id.* at 21.  He also determined that Murry's old fracture may have caused some prior malocclusion.  *Id.*  Dr. Nguyen recommended surgery and advised Murry that he may continue to have some malocclusion postoperatively.  *Id.* at 22.

Dr. Boyette performed surgery on Murry's jaw on June 26, 2024.  Doc. No. 63-3 at 11-19 (06/26/2024 Surgical Records).  The surgical procedures included: (1) open reduction and internal fixation of right mandibular parasymphyseal fracture; and (2) open reduction and internal fixation of left mandibular angle fracture.  *Id.* at 17. The operative report documented the following findings: "Both fractures were partially healed. Both required osteotomies to recreate the fractures to mobilize, the patient had a prior left mandibular parasymphyseal fracture that was not mobile, but this affected his overall occlusal status." *Id.*  The preoperative history in the operative report stated, in part:

> Mr. Murry is incarcerated man I saw him in clinic for recent mandibular fractures. The patient was uncertain as to the timeframe that he suffered these mandible fractures. He also reported a previous mandible fracture that was treated that he did not seek treatment for this was several months ago.  This was on the left side.  I reviewed a CT scan that showed the healing of the old fracture, which continued to be displaced. He also had new fractures on the right parasymphyseal region and on the left mandibular angle region.

*Id.*[7]

Murry returned to UAMS for post-operative care on July 9, 2024, and August 6, 2024. Doc. No. 63-3 at 1-10 (07/09/2024 & 08/06/2024 ENT Records). He continued to receive care for his jaw while at the ADC. *See* Doc. No. 68-8 (ADC Medical Records).

## IV.  Analysis

### *A.    Deliberate Indifference Claims*

1.      <u>Legal Standard – Pretrial Detainee's Medical Treatment Claims</u>

Murry was a pretrial detainee at the Facility at all times relevant to this case. Pretrial detainees' claims are evaluated under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment. *See Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). Pretrial detainees are entitled to at least as much protection under the Fourteenth Amendment as under the Eighth Amendment. *See id.* (citing *Spencer v. Knapheide Truck Equip. Co.,* 183 F.3d 902, 906 (8th Cir. 1999)); *see also Davis v. Hall,* 992 F.2d 151, 152–53 (8th Cir. 1993) (per curiam) (applying deliberate indifference standard to pretrial detainee's claims of inadequate medical care).[8] To

---

[7] Murry disputes that he told Drs. Nguyen or Boyette that he did not remember how he fractured his jaw or that he did not seek treatment for an earlier fracture. Doc. No. 83 at 3. Murry's statements to these physicians is not material to whether any of the defendants were deliberately indifferent to his serious medical needs.

[8] In *Spencer,* the Eighth Circuit explained that it had never articulated an exact standard for evaluating medical treatment claims brought by pretrial detainees. 183 F.3d at 905. The Court acknowledged that pretrial detainees' claims may be subject to an objective reasonable test rather than the subjective deliberate indifference standard. *Id.*

succeed with an Eighth Amendment inadequate medical care claim, a plaintiff must allege and prove that: (1) he had objectively serious medical needs; and (2) prison officials subjectively knew of, but deliberately disregarded, those serious medical needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Additionally, the Eighth Circuit has held that a "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).

### 2. Turn Key Defendants

In his complaint, Murry alleged that Nurse Henderson was present in the nurses' station when he arrived after the November 30 altercation, but that she did not treat his injuries and only took pictures. Doc. No. 2 at 4. He claimed he was not sent to a hospital or given any medical assistance. *Id.* Murry stated he suffered intense pain, filed a medical grievance, and was given an x-ray a few days later. *Id.* He stated that Dixon told him there were no fractures. *Id.*

Murry's medical records contradict his assertion that he received no medical treatment immediately after the November 30 altercation and did not receive an x-ray

---

The Eighth Circuit addressed this issue again in *Bailey v. Feltmann*, 810 F.3d 589, 593 (8th Cir. 2016), where it declined to address the proper constitutional standard unnecessarily, but noted that when that case was decided it was not clearly established that a pre-trial detainee was entitled to more protection than that provided by the Eighth Amendment.

until several days later.[9]   A medical record dated November 30 documents that Henderson took Murry's vitals, examined him, contacted a provider who ordered an x-ray, and ordered pain medication.   Doc. No. 53 at 52-53.   An x-ray report dated December 1, 2023, prepared by a radiologist, found no fractures.  *Id.* at 120.  Murry asserts that this x-ray report is fake, generated by artificial intelligence, or otherwise unreliable, but he has come forward with no evidence to contradict the records showing he was evaluated and treated the day of the altercation, and that he was x-rayed the next day as ordered by the provider. A plaintiff's unsupported statement is insufficient to defeat a properly supported motion for summary judgment.  *See Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010) (quoting *Flentje v. First Nat'l Bank of Wynne,* 340 Ark. 563, 11 S.W.3d 531 (2000) ("When the movant makes a prima facie showing of entitlement to a summary judgment, the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact."); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule

---

[9] As stated above, if opposing parties tell two different stories, as is the case here, the Court is required to view genuinely disputed material facts in a light most favorable to the nonmoving party, **as long as** those facts are not so blatantly contradicted by the record that no reasonable jury could believe them.  The Court finds that Murry's allegations that he received no medical treatment after the November 30 altercation is so blatantly contradicted by the record that no reasonable jury could believe them. The Court is therefore not required to view the facts in a light most favorable to Murry, and declines to adopt his version of the facts for purposes of ruling on this motion.  *See Boude v. City of Raymore*, 855 F.3d 930, 933 (8th Cir. 2017).

56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.").

The record in this case shows that Henderson provided treatment to Murry after the November 30 altercation and ordered the treatment recommended by a provider. The following day he was x-rayed, and a radiologist found no fracture.[10] Murry has not produced any medical records or expert opinion testimony to establish that his injuries warranted medical treatment different than what he received or that would be obvious to a layperson. *See Williams v. Whitfield*, No. 2:09CV00100 JLH/BD, 2010 WL 4792146, at \*2 (E.D. Ark. Nov. 17, 2010) (quoting *Roberson v. Bradshaw,* 198 F.3d 645, 648 (8th Cir.1999) ("'[W]e have repeatedly emphasized that the need or the deprivation alleged must be *either obvious to the lay person* or supported by medical evidence, like a physician's diagnosis.'") (emphasis in original).

Murry also alleged in his complaint that Nurse Dixon denied him attention for his complaints that he could not chew properly, experienced dental pain, had teeth "protruding out of [his] gums," and had misaligned teeth following the November 30 altercation. Doc. No. 2 at 5. He stated that he put in medical grievances from December of 2023 through May of 2024, but Dixon denied him attention and said they did not have a dentist. The record in this case belies those allegations. Dixon

---

[10] Even if Murry sustained a jaw fracture on November 30 that was not captured by the December 1 x-ray, it would not establish that Henderson (or Dixon to the extent she also reviewed the x-ray) were deliberately indifferent to Murry's serious medical needs. They had every reason to rely on the findings in the x-ray report.

assessed Murry's complaints of dental pain on December 6, 2023, and found no signs of infection. Doc. No. 63-1 at 50-51. She noted he had been punched in the face in an altercation the week before and wanted to be seen by a dentist. *Id.* She also prescribed Tylenol, Ibuprofen, and a salt water rinse. *Id.* Dixon assessed Murry again on December 21, 2023, in response to his complaints about a tooth. *Id.* at 48-49. She found no sign of infection and again ordered Tylenol and Ibuprofen. *Id.* To the extent a potential jaw fracture existed but was not identified by the radiologist who reviewed the December 1 x-ray, that would not be obvious to Dixon. Her failure to recognize that a jaw injury might be causing those complaints would, at worst, constitute negligence.[11] And as noted above, mere negligence does not amount to a constitutional violation.

There is no indication in the record that Dixon responded to Murry's grievances about dental pain or trouble chewing. In response to those grievances, he was informed that he was on the dental waiting list on January 26, 2024, and on February 24, 2024. Doc. No. 63-2 at 24 & 33. He was ultimately examined by APRN McFarlan on April 23, 2024, who diagnosed an infection and provided treatment. Doc. No. 63-1 at 26-27.

Finally, Murry's only complaint allegation against Defendant Leon Fields is that he threatened him after the June 6 altercation. Doc. No. 2 at 6 ("I was threatened by the nurse on shift, Nurse Leon Fields while trying to explain how much pain I was in.").

---

[11] The Court makes no finding regarding whether Dixon's actions or inactions amounted to negligence.

The Court initially construed Murry's complaint as alleging that Fields threatened him instead of providing medical treatment.[12]  However, Murry does not make any such allegation in his responsive pleadings.  Rather, he asserts that Fields threatened him on June 6, 2024, and that he "became hostile and told me he would 'snatch me off' the nurse table and harm me physically."  Doc. No. 76 at 6; *see also* Doc. No. 63-4 at 45. Murry's medical records show that Dixon (not Fields) assessed Murry after that interaction and ultimately obtained orders from APRN Carter to send Murry to a hospital for emergency treatment.  Fields' only involvement was to order medication and a liquid diet for Murry after he returned to the Facility.  *See* Doc. No. 63-1 at 7-8; Doc. No. 63-5 at 10-13.  Accordingly, the record shows that Fields was not deliberately indifferent to Murry's serious medical needs.

Because the evidence in this record does not establish that any of the Turn Key Defendants were deliberately indifferent to Murry's serious medical needs, Murry's claims against the Turn Key Defendants in both their individual and official capacities[13] should be dismissed with prejudice.

---

[12] To the extent Murry sues Fields solely based on his alleged threats, he fails to describe a constitutional claim.  *See Hopson v. Fredericksen,* 961 F.2d 1374, 1378 (8th Cir. 1992) (finding officer's use of racial slur and threat to knock prisoner's teeth out was not actionable).  The only exception to this rule is when a verbal threat rises to the level of a "wanton act of cruelty" such that the inmate is in fear of "instant and unexpected death at the whim of his allegedly bigoted custodians."  *Burton v. Livingston,* 791 F.2d 97, 99–100 (8th Cir. 1986).  Murry's allegation that Fields threatened to harm him physically does not rise to this level.

[13] *See Brockinton v. City of Sherwood*, 503 F.3d 667, 674 (8th Cir. 2007) (official capacity claim fails if plaintiff cannot establish a constitutional violation).

3.      Faulkner County Defendants.

a)      *Individual Capacity Claims*

The Faulkner County Defendants argue that they are entitled to qualified immunity with respect to Murry's claims against them in their individual capacities because he cannot establish that they violated his constitutional rights.[14]  Doc. No. 67 at 3-9.  Murry alleged that Doyle and Wade were in the nurses' station after the November 30 altercation.  Doc. No. 2 at 4.  He alleged that Henderson took photos while Wade and other officers stood by laughing, and that he "was not sent to the freeworld hospital or given any medical assistance," but "was sent to the hole next door to the nurse station."  *Id.*  As explained above, Murry's medical records show that he did receive medical treatment after the November 30 altercation, and it was APRN Carter that ordered an x-ray and no other emergency treatment.  There is no indication that Doyle or Wade were involved in Murry's treatment once he was in the nurses' station, and Murry has not alleged that Doyle or Wade prevented him from receiving medical treatment.  The County Defendants are therefore entitled to summary judgment as to Murry's deliberate indifference claims in their individual capacities.  *See Keeper v. King,* 130 F.3d 1309, 1314 (8th Cir. 1997) (prison official not involved in treatment

---

[14] To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct.  *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015).  Qualified immunity is a question of law, not fact, for the court to decide. *Kelsay v. Ernest*, 933 F.3d 975, 981 (8th Cir. 2019).

decisions made by medical unit's staff cannot be liable for medical staff's diagnostic decisions).

### b. Official Capacity Claims

The County Defendants are also entitled to judgment in their official capacities. Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veach v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Thus, a suit against a defendant in his official capacity is in essence a suit against the County or city itself. *See Murray v. Lene*, 595 F.3d 868 (8th Cir. 2010); *Liebe v. Norton*, 157 F.3d 574 (8th Cir. 1998). A municipality cannot be held liable on the basis of *respondeat superior*, or simply by virtue of being the employer of a tortfeasor. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201 (8th Cir. 2013). Accordingly, Doyle and Wade, as county employees, can only be held liable in their official capacity in this case if Murry can establish that a constitutional violation was committed pursuant to "an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009).

Murry's official capacity claims against Doyle and Wade fail for two reasons. First, they did not violate his rights, as explained above. Second, Murry did not allege in his complaint that any alleged constitutional violation was caused by an unconstitutional policy or custom of Faulkner County. Doyle and Wade are therefore entitled to judgment as a matter of law in their official capacities.

**B.    Claims First Raised in Murry's Responsive Pleadings**

Murry raised several new claims in his responsive pleadings, including First Amendment retaliation and access-to-courts claims. *See* Doc. No. 73 at 2-3 (generally alleging that all defendants retaliated against him for his use of the grievance procedure, alleging that unnamed jailers physically and verbally retaliated against him, physically assaulted him, and sexually harassed him); Doc. No. 82 at 5 (unnamed "officers" tried to break his wrist while he was cuffed while he was taking a new booking photo);[15] Doc. No. 73 at 7 (generally alleging that defendants refused him 1983 forms and tampered with his mail); Doc. No. 75 at 4 (same); Doc. No. 76 at 4-5 (same). Murry also alleges for the first time that he endured poor sleeping conditions with no pillow or ability to elevate his head (Doc. No. 75 at 3-4; Doc. No. 76 at 12) and did not receive pain medication or ice packs after the November 30 altercation (Doc. No. 71 at 2; Doc. No. 75 at 2-3).

Murry has not sought permission to amend his complaint to add these claims in an amended complaint; he has not filed a proposed amended complaint raising these claims; and the defendants have not had the opportunity to defend these claims in an

---

[15] Murry described the rebooking incident in his complaint as the use of "obsessive force." Doc. No. 2 at 5-7. He alleged that unnamed officers changed his booking number and photo in an effort to erase grievances he had filed. *Id.* Murry made no allegations of physical force in his complaint, and the Court did not construe the allegations regarding a new booking number and photo as part of any actionable claim.

answer or other dispositive motion.[16]  These claims are therefore not properly before the Court and are not addressed.  *See e.g., Loggins v. Albert*, No. 24-1545, 2024 WL 5074756 (8th Cir. Dec. 11, 2024) (pretrial detainee could not add new theory of excessive force in his deposition when it was not included in his complaint and he did not move to amend); *N. States Power Co. v. Fed. Transit Admin.,* 358 F.3d 1050, 1057 (8th Cir. 2004) (where complaint contained no allegations that would notify defendant of claim, party could not manufacture claim late in litigation to avoid summary judgment).

## V.  Conclusion

The undisputed facts establish that the defendants were not deliberately indifferent to Murry's serious medical needs. The undersigned therefore recommends that the defendants' motions for summary judgment (Doc. Nos. 63 & 66) be granted. Murry's deliberate indifference claims should be dismissed with prejudice.

DATED this 23rd day of July, 2026.

_____
UNITED STATES MAGISTRATE JUDGE

---

[16] Pursuant to Federal Rule of Civil Procedure 15(a), once an answer has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires." However, the Court may "properly deny a party's motion to amend its complaint when such amendment would unduly prejudice the non-moving party or would be futile." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008) (citing *Kozohorsky v. Harmon,* 332 F.3d 1141, 1144 (8th Cir. 2003)).